Somonte, Plaintiff and Appellant, *v.* Mimoso, Defendant
and Appellee.

Appeal from the District Court of Humacao in a Petition
for a Writ of Injunction to Recover Possession of Real
Property.

No. 1911.—Decided May 23, 1919.

Answer—Negative Pregnant—Judgment on Pleadings.—When the denial of
the respondent in his answer of the essential averment of the complaint is
in the form of a negative pregnant, judgment should be entered for the
petitioner on the pleadings.

Injunction—Conflicting Titles—Evidence.—When a petition for a writ of
injunction to recover possession of real property is presented in due time
and proper form and the petitioner proves that he was forcibly ousted by
the respondent of the actual possession of a parcel of land adjoining the
property of the latter, evidence offered by the respondent tending to show
what was the true boundary and that according to his title and the survey
of both properties the parcel in controversy is a part of the respondent's
property and not of that of the petitioner, is impertinent.

The facts are stated in the opinion.

*Mr. Francisco González* for the appellant.

*Mr. Joaquín Vendrell* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

This is an appeal from a judgment dismissing a petition
for the restoration of the possession of real estate by means
of a mandatory injunction.

Plaintiff alleged ownership in fee and, up to the time of
ouster, the actual, quiet, and peaceful possession, through
her lessee, of the whole of a parcel of land described as con-
taining 132 *cuerdas,* bounded on the east by the Río Grande
and on the south by lands belonging to Jacinto and María
López Polanco. The essential averment was that "defendant
had violently deprived petitioner and her said lessee of the
physical possession of a portion, approximately one *cuerda,*
of the said property, bounded on the north and west by the
said larger tract; on the east by the Río Grande, and on
the south by lands belonging to Jacinto and María López
Polanco, removing the fence (property of petitioner) along
the boundary line between the said portion and the Polanco

tract; repeatedly cutting the *malojillo* from the. said portion; appropriating the same to his exclusive benefit, and, finally, threatening to kill the peons of petitioner's lessee who went to cut *malojillo* from the said piece."

The answer denied this averment "in so far as it charges that this respondent has violently or otherwise deprived petitioner and her said lessee of the physical possession of any parcel of land *pertaining to the property of petitioner of the area or within the boundaries specified* in said fourth averment." Similarly, respondent denied that he "had removed any fence *belonging to petitioner,*" or that he "had removed or cut *malojillo* grass *from the property of petitioner,*" or that he "had employed violent means to deprive petitioner of the physical possession of the property or part thereof *belonging to petitioner,* much less to threaten with death or otherwise the peons of the lessee *of the property of petitioner.*" (Italics ours.)

As new matter, respondent, as lessee of the land adjoining that of petitioner on the south, sets up as the true boundary between the two properties a certain brook emptying into the Río Grande; and, further, that respondent, "far from disturbing petitioner in the physical possession of *her property,* has endeavored to maintain possession of *the property leased to him in its entirety and within the limits indicated in the certificates of survey and plats made by competent experts* * * *"; that respondent, "*from the date on which the property described in the answer was leased to him,* has been and is in the physical possession thereof in its entirety, without having attempted now or at any previous time to disturb the possession of *the property of others (propiedad agena),* either by acts of violence or otherwise." (Italics ours.)

At the trial the petitioner, before introducing any evidence, raised some question as to that part of the answer first above quoted, and thereupon counsel for respondent made the following statement:

"In the complaint petitioner alleges that she is the owner of a certain property and says that respondent, in a violent manner, has disturbed petitioner in her possession of a part of the land contained in the said tract. And we then allege that we are in possession of a property described in the answer and that respondent, far from disturbing petitioner in the physical possession of her property, has endeavored to maintain the possession of the property leased to respondent in its entirety and within the limits indicated in the certificates of survey and plats made."

The record then recites that the court overruled the motion and that petitioner took an exception. Just what the motion was is not clear.

The ostensible denial of the essential averment of the complaint is a typical negative pregnant, and if there were any room for argument on this point the affirmative matter contained in the answer, together with the statement of counsel for respondent as to the theory of the defense, would suffice to dispel the doubt. Unquestionably, petitioner was entitled to a judgment on the pleadings if the motion overruled by the court was, in fact, a demand for such judgment.

* * To say the least, a denial in the form of a negative pregnant is such a glaring violation of logical and legal principles, that it exhibits on the part of the pleader either the ignorance which does not comprehend the nature of an issue, or the astute cunning which is able to conceal the want of a defense under the appearance of a direct answer. In either instance it should be condemned by the courts." Pomeroy, Code Remedies (4th ed.), p. 742, sec. 514.

The theory of the court below sufficiently appears from the following excerpt:

"In the case at bar it has not been shown, in our opinion, that the defendant had committed the acts essential to plaintiff's cause of action. The plaintiff did not make a case, because, aside from the fact that it is doubtful whether or not the plaintiff was in possession of the parcel of land in dispute, owing to a certain confusion of boundaries, it is clearly established that both parties agreed to survey the land in question; that the defendant directed a certain

engineer to make the survey, from which survey it appeared that the tract of land in controversy belonged to the larger property of which the defendant is in lawful possession; and it also appears that the plaintiff, refusing to accept the survey as made, on her own behalf named another engineer, who, in turn, resurveyed the land and found a discrepancy as to one of the boundary lines, which he did not clear up on account of the defects contained in plaintiff's title papers.

"Under all the circumstances of this case, we believe that the defendant only took possession of a property leased to him, maintaining himself in the possession of the whole property within the boundaries and area thereof, as delivered to him by the legal owners thereof. This fact appears from the plats, a certificate of survey and the testimony of expert witnesses for both parties.

"Moreover, the court made a personal inspection requested by both parties and noted that a fence between the two properties, placed there long ago by the plaintiff, is the true boundary line between the two properties."

The evidence substantially follows the pleadings and involves no appreciable conflict. A full rehearsal of the testimony seems hardly necessary. The witnesses for petitioner established a strong *prima facie* case along the lines indicated in the petition, and they are neither openly contradicted by the witnesses for the defense nor is the truth of their statements clearly questioned by the trial judge. The question of what constitutes the true boundary line cannot properly be regarded as involved and should not have been dragged into the case or considered by the court. The circumstances mentioned with regard to the surveys and the result thereof are equally irrelevant. Neither the lease of the adjoining property to respondent, nor the calls of the title papers and surveyor's notes in his possession, nor the resurvey made by him, create any right to seize by force and violence any part of such property in the actual possession of petitioner. The law of 1913 is plainly and primarily designed to prevent indulgence in such methods and to compel a resort instead to the courts.

We are in full accord with the statement made by the

trial court prefatory to the remarks above quoted, to the effect that "the object of the statute in question is not to settle questions of conflicting titles to real estate, but rather to provide a legal means for the prompt and efficient enforcement of the principle of substantive law which defines the right of a party in possession to be protected in that possession." But the determination of boundary disputes is as foreign to the purpose of the law as is the adjustment of conflicting claims to ownership.

The fence referred to in the findings as having been built by petitioner and as constituting the true boundary between the properties evidently is a fence separating the *cuerda* in dispute from the main body of land in possession of petitioner, and not the fence which, until destroyed by respondent, marked the actual physical boundary line, whether true or false, between the two larger tracts.

It is unfortunate that the court, after viewing the premises, made no finding as to the indications of the prior existence and removal of the fence alleged and shown by the testimony to have been removed by respondent, or as to the existence and extent of the alleged patch of *malojillo,* or other indicia of possession and cultivation by petitioner prior to the alleged seizure by respondent under his lease. The mere fact that the *cuerda* of land in controversy had been inclosed and so cut off from the rest of the property in the possession of petitioner and that the fence along the creek, as well as the fence removed by respondent, had been built by petitioner and was in fact the true boundary line between the two properties, is not inconsistent with the theory of actual possession by petitioner, so strongly supported by all the testimony going directly to this point, and pointed to by all the other circumstances in the case, and therefore constitutes no obstacle to the relief sought. The finding of the court goes no further, and the evidence, as a whole, conclusively shows that, rightfully or wrongfully, petitioner was and for many years prior to the acts com-

plained of had been in actual possession of the *cuerda* in question.

The judgment appealed from should be

*Reversed and substituted.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.